CONTINENTAL SOUTHERN LINES, INC., et al. *v.* WILLIAMS

No. 39906 February 6, 1956 85 So. 2d 179

March 19, 1956 85 So. 2d 910

*Huff & Williams,* Meridian; *Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellants.

628

*M. V. B. Miller, Gerald Adams, Donald Williamson,* Meridian, for appellee.

HALL, J.

The appellee brought suit against appellants for the recovery of damages because of personal injuries sustained by him when a pickup truck which he was driving collided with a passenger bus of appellant Continental Southern Lines, Inc., driven by the appellant William Ray Conlee, at a point about three miles east of the town

of Hickory on Highway 80 at about 7:55 P.M. on March 31, 1954. He obtained a judgment from which this appeal is prosecuted.

The bus had been stopped with approximately one-half thereof on the main traveled and paved portion of the highway. It had driven a distance of about seventy miles from Jackson and there had been a misting rain all the way from Jackson to the scene of the accident. The highway runs in an easterly direction and while the bus was stopped and discharging two passengers, the appellee drove into the rear end of the bus.

The first five points argued by appellant may be summarized into the one contention that the bus driver was not guilty of any negligence and that consequently the appellants were entitled to a peremptory instruction. Appellants rely heavily on the case of Teche Lines, Inc. v. Danforth, 195 Miss. 226, 12 So. 2d 784, which involved an interpretation of Section 8215, Code of 1942, which is to the effect that no vehicle shall be stopped or parked upon the paved or improved or main traveled part of a highway when it is practical to stop or park the vehicle off such part of the highway but in every event a clear and unobstructed width of at least twenty feet of such traveled part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available for a distance of two hundred feet in each direction upon said highway. In the Danforth case a bus had been stopped without leaving the twenty feet of clearance and it was shown that there was no other place nearby where it could be stopped with the sufficient twenty-foot clearance. Even in that case the Court held that the question of liability was for the jury. It reversed the judgment of the lower court and remanded the case for a new trial because of error in one of the plaintiff's instructions. The ruling in the Danforth case is summed up in the last two paragraphs of the opinion as follows:

"Our ruling is that when twenty feet of clearance is impossible, the vehicle shall turn as far to the right as practical including sound and safe shoulders, but must not stop upon any part of the traveled highway unless and until at least 200 feet clear view is available in each direction from the point where the stop is made, save when the vehicle is disabled, as provided for under subsection (b); and save, further, when on account of obstructions or equivalent conditions ahead, it is impossible to proceed so as to leave the 200 feet of clear view; and that all this is for the determination of the jury, instead of being taken away from them, as was done here.

"We pretermit all other questions raised in this case. We have preferred to confine this opinion to the one issue presented by the quoted instruction and the error therein. And it must be noted that we have not decided anything about the parking of vehicles or leaving them standing. Nor anything about the feature mentioned in Kelly v. Locke, supra (186 Ga. 620, 198 S. E. 754), that a driver may be required to go forward to a place where there is an available and safe space, sufficient to allow a compliance with all the literal terms of the statute, if within a reasonably short distance ahead, and if such place be known to, or observable by, the driver in the exercise of a reasonable diligence. The feature mentioned in the foregoing sentence was not submitted to the jury by the quoted instruction, but in fact by the import of the instruction was taken from the jury, even if there had been evidence sufficient to go to the jury on that issue."

There was a conflict in the evidence in this case. The accident occurred on a straight stretch of road where there was no curve for a mile or more. At the scene of the accident Highway 80 is intersected by a link of Old Highway 80 which crosses at an oblique angle. That part of the old highway on the north side of the new highway was still maintained for local traffic and was a

safe and solid roadway fronting 123 feet on the new highway and was just ahead of the point where the bus was stopped. Instead of pulling over and stopping at that point, the driver pulled to the right and stopped at a place 19 feet beyond that portion of the old highway on the south side of the new highway at a place which by actual measurement was 9 feet and 8 inches in width to the south of the paved portion of the new highway. Nineteen feet to the rear the old highway fronted for a distance of 183 feet against the pavement of the new highway and there was a level shoulder 16 feet and 6 inches in width by actual measurement of an engineer and the ground at that point was solid and mostly sodded with Bermuda grass. The figures which we have given were testified to by a registered engineer who was a witness for the plaintiff. Other witnesses, who did not measure these distances gave estimates of them which are not at great divergence from the actual measurements. The bus driver testified that the reason he did not stop and pull off on this wide area of shoulder adjacent to the pavement was that there were some piles of loose dirt on the shoulder and he was afraid the bus would stick if he pulled over into this area. It was shown that the area in question was a regular parking place for vehicles traveling the highway. The maintenance superintendent for the Highway Department testified that it had been two years since any dirt was dumped in this area. There were a few little piles of dirt in the abandoned part of the old highway south of the road, but according to the engineer who testified, these piles of dirt were 26 feet from the pavement.

After the accident a highway patrolman arrived on the scene in a few minutes and had the bus driver pull ahead and cross the road and park his vehicle on the old Highway 80 on the north side of the new highway. We think the facts in this case are entirely different from those shown in the Danforth case, but even

under the holding in the Danforth case it is our opinion that the issue made by the plaintiff's proof was clearly for determination by a jury and that the trial court committed no error in submitting the case to the jury. There was clearly an issue as to whether or not the bus driver could have stopped his bus on the wide portion of shoulder to the south of the highway and whether, having passed that area by a few feet, he should have backed up and stopped in the area on the south side or whether he should have pulled over to the north side of the highway and stopped to discharge his passengers in the old highway on the north side. By pursuing either course, he could have left the entire paved portion of the new highway open for use by the travelling public. See also Continental Southern Lines, Inc. v. Klaas, 217 Miss. 795, 65 So. 2d 575.

 The appellants next contend that the trial court should have instructed the jury that the plaintiff was guilty of contributory negligence as a matter of law. According to the proof for the plaintiff it was misting rain and foggy and the visibility was poor. He was travelling about 25 or 30 miles per hour. The bus had been in the rain for approximately 70 miles. The plaintiff said that the lights on the bus were so dim that he could not see them until he was within 25 or 30 feet of the bus. It is argued that litter and dirt from the roadway had spattered upon the lights and had obscured them. We think this was a question for the jury. Section 1455, Code of 1942, provides: "All questions of negligence and contributory negligence shall be for the jury to determine." We do not hold that it is never proper to peremptorily charge the jury that the plaintiff was guilty of contributory negligence as a matter of law, but we think that under the facts of this case the question was for determination by the jury. The question of the plaintiff's contributory negligence was submitted to the jury for decision by an instruction which the defendant ob-

tained. Under the facts of this case we think the question was a jury issue and that the lower court committed no error in refusing to peremptorily charge the jury that the plaintiff was guilty of contributory negligence as a matter of law.

■■ ■ Complaint is next made that the plaintiff's main instruction on liability is erroneous. The instruction follows the rule which was announced in the Danforth case, and we find only one error therein. It says "The court instructs the jury for the plaintiff that if you believe", and it fails to say "from the evidence". Section 58 of Alexander's Mississippi Jury Instructions contains a discussion of this matter and says: "The omission of this phrase has been repeatedly condemned but divergent results have been followed in adjudging its effect. The conclusion of the matter is that such omission is error. Whether it is reversible depends upon such factors as the evident guilt of the defendant and the curative effect of other instructions." The appellants obtained an instruction that the burden is upon the plaintiff to prove his case by a preponderance of the evidence. It also obtained several instructions emphasizing the rule laid down in the Danforth case, as well as numerous other instructions covering every conceivable phase of the law, and we that while the instruction is erroneous in omitting the words "from the evidence", such omission under the circumstances here presented does not constitute reversible error. In Noble v. State, (Miss.) 72 So. 2d 687, 691, we said: "It is also argued that the above mentioned instruction was erroneous in that it failed to require that the jury believe 'from the evidence' beyond a reasonable doubt that the defendant was guilty as charged in the indictment. But the omission of the words 'from the evidence' in this instruction was cured by other instructions granted to the State and to the defendant."

■■ ■ It is next contended that the verdict for $29,-000.00 is so grossly excessive as to require another trial.

The proof shows that the plaintiff received a serious head injury. He suffered a concussion of the brain and there was a severe cut on his head which required 8 or 10 stitches. Some of the nerves were severed. He suffered severe headaches and also suffered blackouts. His memory was impaired and his eyesight was seriously affected. He had severe chest and back injuries and sustained four fractured ribs. Both knees were badly injured. There developed from his injuries an arthritic condition in his spine and in his knees. His legs would give way under him when walking and at times he would fall completely down. The proof is overwhelming that he suffered excruciating pain. His chest injury was such that it affected his breathing. He was unable to sleep at night and was in fact made a nervous wreck. The doctor testified that he would continue to suffer pain and estimated his disability at being from 65 to 75 percent in severity and further said that it was permanent to this extent. Before this injury the plaintiff was strong and able bodied. He operated a hundred and ten acre farm and outside of the farming season he did carpenter work. He is unable to follow either of these occupations in the future. While the verdict is large, we are unable to say that it is so large as to evince passion and prejudice on the part of the jury to such extent as to justify a reversal for a new trial.

■■ The accident in this case occurred in Newton County. The appellant Conlee is a resident citizen of Hinds County. Continental Southern Lines, Inc., is a Louisiana corporation and its resident agent in Mississippi resides in Hinds County. Admittedly the defendant Continental Southern Lines, Inc., operates a regularly scheduled bus line for the transportation of passengers not only in Hinds and Newton Counties but also in and through Lauderdale County where this suit was filed. The appellants made a motion in the lower court for a change of venue, which motion was overruled and that

action of the lower court is assigned as error. Section 1434, Code of 1942, provides that actions against any corporation owning, managing, operating or controlling a motor transportation line for the conveyance of passengers for hire over the highways in the State of Mississippi may be brought in any county in which any part of such motor transportation line or route may be. The section applies not only to motor transportation routes but also to numerous other types of public service corporations named therein. The specific question which appellants raised was decided by this court adversely to their contention in the case of Mississippi Power & Light Co., et al v. Lowe, 179 Miss. 377, 175 So. 196, and an appeal from that decision was dismissed by the Supreme Court of the United States. 302 U. S. 644, 82 L. Ed. 501, 58 S. Ct. 123. See also the case of F. B. Walker & Sons, Inc., et al v. Rose, 78 So. 2d 592, and the authorities therein cited.

It follows that the judgment appealed from should be and the same is hereby affirmed.

Affirmed.

*McGehee,* C.J., *Lee, Kyle* and *Holmes,* JJ., Concur.

### ON SUGGESTION OF ERROR

McGehee, C. J.

In the decision rendered on February 6, 1956, in the above styled cause, we stated in paragraph 7 of our opinion, in discussing the issues that were for decision by the jury, that: "There was clearly an issue as to whether or not the bus driver could have stopped his bus on the wide portion of the shoulder to the south of the highway, and whether, having passed that area by a few feet, he should have backed up and stopped in the area on the south side or whether he should have pulled over to the north side of the highway and stopped to discharge his passengers in the old highway on the north

side." ██ █ We have concluded to modify that paragraph of the opinion to the extent of eliminating therefrom the words: "or whether he should have pulled over to the north side of the highway and stopped to discharge his passengers in the old highway on the north side." There was no nearby oncoming traffic in the instant case at the time of the accident, and for that reason the driver of the bus would doubtless have been able to safely pull over to the north side of the highway on the occasion in question, but we do not want to be understood to be imposing the duty upon the bus company of endangering the safety of oncoming traffic by using the wrong lane of the highway to cross to the other side thereof under different circumstances than those existing in the instant case.

However, the Court had further concluded to adhere to its former decision as to the result reached by the affirmance of the case.

Suggestion of error overruled.

*Hall, Lee, Kyle* and *Holmes,* JJ., concur.