**BANKERS LIFE & CASUALTY COMPANY, Appellant,**

v.

**Raldo G. GOODALL, Appellee.**

**No. 22991.**

United States Court of Appeals
Fifth Circuit.

Nov. 30, 1966.

Rehearing Denied Dec. 28, 1966.

---

Roger A. Hansen, Oliver A. Fountain, Brundidge, Fountain, Elliott & Churchill, Dallas, Tex., for appellant.

J. R. Black, Jr., Scarborough, Black, Tarpley & Scarborough, Abilene, Tex., for appellee.

Before BROWN, COLEMAN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Raldo G. Goodall, by judgment rendered on a general verdict, recovered $100,000, the stated amount in a group accident insurance policy, for the irrevocable loss of the entire sight of one eye. Bankers Life & Casualty Company appealed from the judgment rendered against it and from the order overruling its motion for a new trial. We affirm.

On February 18, 1964, Goodall slipped and fell, striking his left eye and forehead on a bolt. On the same day he was driven to the nearest available doctor who, after rendering first aid treatment, advised appellee to consult an eye specialist. On the following day an ophthalmologist examined Goodall and found that "he had a fairly red eye, sensitive to light, two minor abrasions, rough areas on the cornea, and he had a mild to moderate iritis, which is eye inflammation of the interior of the eye induced by various types of injections or injuries." On October 1, 1964, appellee's left eye was surgically removed by another ophthalmologist, who had examined the patient for the first time on the preceding day. In the interim between the accident and the surgical operation, Goodall, complaining at times of loss of vision and on other occasions of severe pain, was examined and treated by numerous doctors. Goodall filed a complaint to recover $100,000 under a group policy issued by appellant to Ford Motor Company, in which he was a named insured. The policy provides a benefit of $100,000 for the irrevocable loss of the entire sight of one eye resulting from injury "causing the loss * * * directly and independently of all other causes and effected solely through an accidental bodily injury to the Insured Person * * *. The policy does not cover any loss caused or contributed to by * * medical or surgical treatment (except

medical or surgical treatment made necessary solely by injury); * * * "

Appellant lists seven specifications of error of the trial court, the first of which is the denial by the court of a motion for a directed verdict; the remaining specifications of error pertain to the lower court's charge to the jury. Appellant summarized the alleged errors in three points:

1. Plaintiff failed to submit any evidence that the alleged accidental injury was the sole cause of irrevocable loss of sight directly and independently of all other causes, as it was his burden to do.

2. The trial court erred in failing to submit clearly and so as to prevent confusion the requirements of the policy that the cause of the loss be a certain accident and that such accident be the sole cause directly and independently of all other causes.

3. A voluntary surgical removal of an eye, without prior irrevocable total loss of sight, cannot be the basis of recovery under the policy requiring irrevocable loss of sight directly and independently of all other causes and solely caused by accidental injury.

Appellant argues that in order to recover under the policy the assured must plead and prove under the specific provisions contained therein that the accidental injury complained of was the sole cause of his loss, independently of all other causes; that the assured's failure to carry this burden entitled appellant to a directed verdict.[1]

The fact of an accident occurring on February 18, 1964, causing injury to appellee's left eye, is not in dispute. The controversy is over the causal connection between the particular injury and the subsequent blindness prior to surgical removal. There is an abundance of medical evidence to the effect that Goodall was not blind; that no blindness was found

as late as two days prior to surgery; that Goodall did not complain of blindness on various visits to doctors; and that there was no necessity that his eye be surgically removed. There was evidence of medical treatment for complaints unrelated to the accident in question, and evidence which put at issue the veracity of Goodall, as well as evidence from which the jury could have inferred that he was malingering; that his complaint of blindness was attributable to psychosomatic symptoms; that he deliberately aggravated his condition in an attempt to reap the benefits of the insurance policy because of financial difficulties and even subsequent self-inflicted injury as a result of medical findings of vision. The record in fact shows that the assured requested at least three doctors to remove his eye, because of the alleged blindness and accompanying pain.

On the other hand, there was evidence by the surgeon who removed Goodall's left eye that he was totally blind when he first examined him the day prior to surgery and that the blindness and accompanying loss of vision were due to the trauma occurring on February 18, 1964. The pathologist who examined the injured eye after it was removed confirmed the diagnosis. Numerous lay witnesses testified to the apparent suffering of appellee, an obvious change in personality traits subsequent to the accident, and to his reputation for veracity.

■ It is reasonable to assume that the jury could have found blindness and the necessary causal relationship between this condition and the injury complained of by Goodall. The jury weighed the evidence, resolved the conflicts and chose to reach a verdict favorable to the assured. According to the substantial-credible-evidence standards used by this Court to determine the propriety of a directed verdict, the denial of appellant's motion for

1. Mutual Benefit Health and Accident Association v. Hudman, Tex., 398 S.W.2d 110; Sherman v. Provident American Insurance Company, Tex.Civ.App., 1966, 404 S.W.2d 340.

a directed verdict did not constitute error.[2]

Appellant contends that the court in its charge submitted conflicting "theories" to the jury which not only confused the jury but allowed Goodall to recover for the removal of his eye because of pain or surgical loss, neither of which is insured against; that a voluntary surgical removal without prior irrevocable loss is not contemplated by the policy.

The following "theory" is interpreted by appellant as allowing the jury to find for plaintiff without a finding of the occurrence of an accident:

"So, if you find from a preponderance of the evidence that the removal of plaintiff's left eye was made necessary by conditions which developed which were directly attributable to the injury alleged to have been sustained by the plaintiff on February 18, 1964, and not to any other cause, then you will find for plaintiff and so say in your verdict. Otherwise, you will find for defendant."

The second "theory" is interpreted by appellant as allowing plaintiff to recover without a finding of sole cause directly and independently of all other causes:

"Thus to find in favor of the plaintiff, you must find by a preponderance of the evidence that the plaintiff sustained an accidental injury to his left eye. You must further find that the plaintiff then suffered a total and irrevocable loss of sight of his left eye or that the removal of his left eye was made necessary by conditions traceable to an injury, as alleged by him to have occurred on February 18, 1964. If the plaintiff has satisfied you in these respects and made this proof by a preponderance of the evidence, you will find in favor of the plaintiff and so say by your verdict. If the plaintiff has failed to establish these elements to your satisfaction by a preponderance of the evidence, then you will find in favor of the defendant and so say by your verdict."

Appellant also excepts to the phrases "directly attributable" and "conditions traceable" used in the court's charge in connection with causation, in lieu of the exact wording of the policy that the alleged "loss be directly, independently of all other causes," and argues that such "deliberate rewording of the obligations under the contract is a clear violation of due process."

Appellant's argument is without merit. It is noted that the two paragraphs of the charge quoted by appellant follow in sequence; that the second paragraph emphasizes the first; and that all of the requisites of the policy pertaining to causation are set out in the first paragraph making a finding for plaintiff contingent upon a finding that the loss was "directly attributable to the injury alleged to have been sustained by the plaintiff on February 18, 1964, and not to any other cause." In addition to the two quoted paragraphs, the charge also contains a recital of the following applicable language contained in the policy pertaining to causation:

" 'Injury' wherever used in this certificate means bodily injury causing the loss, but only while this certificate is in force, directly and independently of all other causes and effected solely through an accidental bodily injury to the Insured Person."

The charge must be considered as a whole, and the court so instructed the jury in its charge.

Nowhere in the charge does it appear that a finding favorable to the plaintiff might be made based on the necessity of removal of the eye because of pain only. The record shows that Goodall did complain of unbearable pain and loss of vision; Dr. Smart removed the eye after objective findings of both *total blindness and pain.*

It is not the function of an appellate court to weigh conflicting evidence, judge the credibility of witnesses and ar-

2. Necaise v. Chrysler Corporation, 5 Cir., 1964, 335 F.2d 562.

**922**

rive at a conclusion opposite from the one reached by the jury, where there is a reasonable basis in the record for the jury's verdict.[3]

The judgment is, therefore, affirmed.

3. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946).