**Ernest KLEIN, Plaintiff,**

v.

**Wilbert ROBINSON, Defendant.**

**Nos. 71 C 32, 71 C 238.**

United States District Court,
E. D. New York.

June 4, 1971.

Sol Lieberman, for plaintiff.

Cyril Hyman, New York City (Edward R. Neaher, U. S. Atty., of counsel), for defendant.

MEMORANDUM AND ORDER

DOOLING, District Judge.

The earlier of the above actions was commenced in this Court and the later one was commenced in the Supreme Court, County of Kings, and removed to this Court. The defendant is a deputy United States Marshal of this Court and District. The actions arise out of the defendant's attempt to serve and later service on plaintiff on January 15, 1970 of a memorandum and order of January 7, 1970 signed by the Honorable Thomas F. Murphy, United States District Judge, in three actions in the United States

District Court for the Southern District of New York, 69 C 3116, 69 C 3153 and 68 C 4970. The present actions seek damages of $1,200,000 against defendant for slander, assault, and false imprisonment.

Judge Murphy's memorandum and order were made in disposing of motions to dismiss the complaints of Ernest Klein in 69 C 3116 and 69 C 3153 on the grounds that they were commenced in bad faith, were vexatious and abused process or were barred by the Statute of Limitations. The Memorandum and Order, a certified copy of which later was put in defendant's hands for service upon plaintiff Ernest Klein, said among other things

"Plaintiff was, at the time complained of, an active stock market investor and trader and allegedly lost heavily when his margin accounts were liquidated. Today he is a litigious plaintiff nominally appearing *pro se*, and has filed some 40 lawsuits in this Court and in the New York State Courts * * *

Plaintiff is not a *bona fide pro se* litigant. On oral argument before us, he admitted that he had been receiving legal advice from two sources. We think he said they were relatives. His papers are expertly typed, and bear the hallmark of a lawyer's supervision. We are satisfied that he brings these multitudinous actions to harass and possibly intimidate the defendants into a settlement.

Rather than dismiss for such a reason, assuming we have such power, we hereby enjoin the plaintiff "from prosecuting any of the actions pending in this Court against these defendants, except 69 Civ. 3116, 69 Civ. 3153 and 68 Civ. 4970; and in actions 69 Civ. 3116 and 69 Civ. 3153 he is hereby stayed from further proceedings until he files a Corporate Undertaking in the sum of $5000 as security for costs and reasonable counsel fees * * *".

The memorandum and order of Judge Murphy concluded with the following language:

"These are orders. No settlements are necessary. The Marshal is directed to personally serve a certified copy of this order on the plaintiff at his home #5517 15th Avenue, Brooklyn, N. Y. 11219."

The order was dated January 7, 1970.

The log of the Marshal's office for the Eastern District of New York, shows that the process was received in his office on January 13, 1970, and that it was served on January 15, 1970 and returned on January 19, 1970. The log indicates that the defendant was the Marshal effecting the service and it recorded his out-of-pocket charges for the service. Defendant executed two forms USM-282, "Return on Service of Writ", with respect to his attempted service and service of the certified copy of the order. One return reads in its narrative portion,

"Endeavored to serve, Thursday, January 15th, 1970. Could not get anyone to answer. Car was in front of house, while upstairs, some girls were admitted to the lower floor door. Investigation revealed that he was in said house, but was evading service. Note: service made later in the evening."

In the lower left hand corner of the form USM-282 no marshal's fees or mileage amounts were filled in. This "Endeavor to Serve" return was retained in the office of the Marshal for the Southern District of New York and was not put into the file of the District Court for the case because, it is said, the "Endeavor to Serve" did not involve any charge of Marshal's fees.

Another form USM-282, "Return of Service of Writ", was executed by defendant and filed in the Court files of the actions in the Southern District. The return was a regular certificate and return of service upon Ernest Klein and stated that service had been made by handing to and leaving a true copy of the order with "Ernest Klein a/k/a Rabbi Klein in his 1966 Blue Dodge Sedan with lic. plates number DB–843 (N. Y.) personally at the corner of Flatbush

Avenue and Church Street, Brooklyn, New York, on January 15, 1970". The Marshal's fees were filled in as $4 and the mileage as $2.16.

Plaintiff charges that defendant ignored and exceeded the limitation on his authority allegedly contained in Judge Murphy's order in endeavoring to and succeeding in serving the order on plaintiff at a point other than his residence. He charges further that he did not in fact make any attempt whatever to evade the service of the order and did not know that any attempt was being made to serve the order. Plaintiff states that he left his house at 4:15 P.M. on the day in question, or a few minutes thereafter, went to his automobile (The Congregation's) which was standing in front of his house and found that the ignition key had been removed from it. He states that he then walked to the Synagogue, attended or conducted evening service, thereafter returned to his house with a spare ignition key obtained from the Synagogue office, and at about 5:30 drove away to keep an appointment in Flatbush. He charges that while he was driving he realized that someone was pursuing him in another car and trying to get him to stop; the pursuing car drew alongside plaintiff's car at the intersection of Church and MacDonald Avenues at a traffic light, and the driver of the pursuing car got out, came around to plaintiff's car and began knocking at the left window next to plaintiff. Plaintiff states that he thought that the person had a gun in his hand and that plaintiff became frightened and drove off. He states that when he reached the intersection of Church and Flatbush Avenues, driving along Church Avenue, the pursuing car passed him, crossed in front of him and took position right across his path. Other cars behind plaintiff's car in traffic closed up the gap and plaintiff was immobilized. The driver of the pursuing car then left the scene and returned—plaintiff states after ten minutes—with two New York City policemen, and with their assistance ef-

fected the service of Judge Murphy's order.

It is part of plaintiff's claim that when the pursuer, who was indeed the defendant Marshal, stopped him at Church and Flatbush Avenues, he said loudly within ear shot of the two policemen and bystanders

"This defendant has to be stopped to harass all of the people. I have a Court order to stop him harass all the people".

Plaintiff charges also that earlier when the defendant was endeavoring to make the service at plaintiff's residence and was apparently making inquiries in the neighborhood, he said in the presence of others

"I must stop him to harass people; I have a Court Order for him to stop harassing people".

Defendant's daily log as filed in the Marshal's office for January 15, 1970 contains two entries, one referring to the "Endeavor to Serve" and the other to the actual service; they are separated by an entry relating to an unsuccessful attempt to serve an unrelated Subpoena at an address on Avenue U which was apparently some four miles away from plaintiff's residence. The first entry, relating to the Endeavor to Serve, indicates that defendant arrived at plaintiff's house at 4:25 P.M. and left at 5:10 P.M.; in the space left to describe the service is entered "No respond, others were admitted to house thru other door". The second entry, that following the one relating to the Subpoena, indicates that defendant arrived at 6:15 P.M. and left at 6:40 P.M. "The points of travel" reported is to "Church Street" and Flatbush Avenue, Brooklyn, and under the column provided for the name of person served, etc., is entered "Rabbi Ernest Klein, served in his car".

Defendant has moved to dismiss both actions essentially on the ground that he may not be sued for acts performed in the course of the discharge of his duties as a United States Marshal and that he

does not become suable simply because the plaintiff alleges that defendant maliciously humiliated the plaintiff in the course of effecting the service of process and exceeded a limitation on the specified place at which process was to be served. Plaintiff essentially contends that defendant lost whatever immunity might otherwise have attended his acts when he disregarded the limitation in Judge Murphy's order, and, instead of serving the plaintiff with process at his home, set out upon the chase and subjected the plaintiff to the humiliating experience that followed.

The troublesome but important principle of Gregoire v. Biddle, 2d Cir. 1949, 177 F.2d 579 has the powerful support of Barr v. Matteo, 1959, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434; Mr. Justice Stewart dissented from the result reached in Barr, but he joined the four Justices who united in the main opinion in the case in accepting their analysis of the principles involved. Certainly in this Circuit the *Gregoire* principle is unimpaired. See Blitz v. Boog, 2d Cir. 1964, 328 F.2d 596, 600; Ove Gustavsson Contracting Co. v. Floete, 2d Cir. 1962, 299 F.2d 655, 660; *Cf.* Bivens v. Six Unknown Named Agents, 2d Cir. 1969, 409 F.2d 718, 720.

The critically important significance of the principle of *Gregoire* is that it forbids the very suit itself where it appears that the challenge is to acts performed in the course of the discharge of an official duty. The conduct is, simply, not judicially examinable. Here plaintiff charges nothing except things that defendant did in the course of attempting to serve the process that he was charged with the responsibility of serving. He is charged only with having proceeded in the performance of his duty indiscreetly and with an excess of zeal which subjected plaintiff to public humiliation.

■ Even assuming that Judge Murphy's order can properly be interpreted as restricting the Marshal to effecting service at plaintiff's residence, the Marshal's returns, in this consistent with plaintiff's own assertions, show that an unsuccessful attempt was made to serve plaintiff at his residence, and that the second and successful attempt took place when plaintiff was seen to drive from his home and was followed in the effort to complete the service. These facts do not indicate any departure from official duty. It follows that substantively the complaint in each of the two actions is insufficient and must be dismissed.

■ However, in the first of the two actions, 71 C 32, the action initiated in the Federal Court, defendant argued that the suit did not lie in the Federal Court at all. See Bivens v. Six Unknown Named Agents, *supra*, 409 F.2d 718, at 725–726. It may be that the case of a defendant Marshal is a special one, Sonnentheil v. Christian Moerlein Brewing Co., 1899, 172 U.S. 401, 404–405, 19 S.Ct. 233, 43 L.Ed. 492 (and note 28 U.S.C. §§ 561 et seq.); but whether or not the action might have been brought originally in this Court, the State Court action was properly removable to this Court under the literal language of 28 U.S.C. § 1442 (a) (3). While the jurisdictional question relates only to the form of order and judgment to be entered in 71 C 32, nevertheless it must, necessarily, be decided.

■ It may be that 28 U.S.C. §§ 561 et seq. so far define the office and duties of the Marshal and the Deputy Marshals in the present context as to differentiate such a case as the present one against a Marshal from other cases against federal public officers charged with conduct made actionable under State law but not so nearly related to the federal statutes defining the public officers' duties. Moreover it would appear anomalous that the conduct of a Court officer with respect to his discharge of his office should be tested in Courts which could not be supposed to be so familiar with the Marshal's duties as the Court with which his duties are associated. It is concluded, with hesitation, that jurisdiction does exist in the Federal Court. Accordingly it is

Ordered that the complaint in each action is dismissed and the Clerk is di-

rected in each action to enter judgment that the plaintiff take nothing and the action is dismissed.